644 So.2d 93 (1994)
Walter Daniel CZUBAK, Appellant,
v.
STATE of Florida, Appellee.
No. 93-00312.
District Court of Appeal of Florida, Second District.
September 2, 1994.
*94 James Marion Moorman, Public Defender, and A. Anne Owens, Asst. Public Defender, Bartow, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellee.
CAMPBELL, Judge.
Appellant, Walter Daniel Czubak, challenges his second degree murder conviction and life sentence for the murder of Thelma Peterson, an elderly female companion with whom Czubak had lived for several months preceding her death. Czubak has been twice tried for the October 1985 murder of Mrs. Peterson. The first trial resulted in Czubak being convicted of first degree murder and sentenced to death. On appeal, the supreme court reversed, primarily because it found that a key state's witness had prejudiced Czubak's trial by testifying that he was an escaped convict. Czubak v. State, 570 So.2d 925 (Fla. 1990). On retrial, after remand, Czubak was found guilty of second degree murder and sentenced to life imprisonment. That is the conviction and sentence which Czubak now appeals. While we affirm Czubak's second conviction and sentence, we do find that two of the issues warrant discussion. For purposes of this discussion, however, the facts of the case, as set out in Czubak, supra, are sufficient and need not be restated here.
Czubak first argues that he was improperly fettered by leg shackles throughout his trial. While shackling is an inherently prejudicial practice, it is a permissible tool to be exercised in the sound discretion of the trial judge when circumstances involving the security and safety of the proceeding warrant it. Correll v. Dugger, 558 So.2d 422 (Fla. 1990); Stewart v. State, 549 So.2d 171 (Fla. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3294, 111 L.Ed.2d 802 (1990). The trial judge here validly exercised such discretion. Czubak was facing retrial after having been initially tried, found guilty of first degree murder and sentenced to death. He was a previously escaped convict. The leg shackles were such that he was not hampered in his movements nor in assisting in his defense. The trial judge ensured that Czubak would not be moved about in the presence of the jury so as to prejudicially display the shackles to them, and he was seated in such a way during the trial that the jury would not observe the shackles. We find the trial judge properly exercised her discretion.
We discuss this point only because there was some discussion on the record that shackling may be a "routine policy" in all murder trials in Pasco County. If so, any such "routine policy" is improper without the necessary circumstances present which, on a case-by-case basis, allows the trial judge the discretion to permit shackling and thereby overcome what is otherwise an inherently prejudicial practice.
The other issue we discuss involves the propriety of the court's exclusion of the defense-proffered hearsay testimony of three or four witnesses (the defense never made it clear exactly the number of witnesses available to testify) who would have testified that an Edward Eugene Ragsdale had confessed to an involvement in the murder of Mrs. Peterson. Mr. Ragsdale, between Czubak's first and second trial, had been found guilty and sentenced to death for the January 1, 1986, first degree murder of an Ernest Mace. See Ragsdale v. State, 609 So.2d 10 (Fla. 1992).
While we have struggled with this issue, in the final analysis, we conclude it is without merit. During Czubak's first trial, the defense proffered Ragsdale as a witness. The proffer established that Ragsdale would invoke his Fifth Amendment rights and refuse to answer questions. The trial judge in that first trial then declared Ragsdale "unavailable" as a witness under section 90.804, Florida *95 Statutes (1987), and Czubak was allowed, pursuant to section 90.804(2)(c), to call the witnesses to Ragsdale's purported "confessions" relating to the murder of Mrs. Peterson. These were the same witnesses whose testimony was proffered and refused in the second trial.
In the second trial, Ragsdale was again proffered by Czubak as a witness, but at this second trial, Ragsdale did not invoke his Fifth Amendment rights and refuse to testify. Rather, his proffered testimony was that he knew nothing of the death of Mrs. Peterson and had never made any statements concerning that subject to any of the witnesses sought to be offered by Czubak. Czubak's attorney at the second trial was attempting to impeach Ragsdale under section 90.608, Florida Statutes (1990), by offering the witnesses to Ragsdale's purported confessions. Although section 90.608 had been amended by Laws of Florida 90-174 to provide that a party calling a witness could impeach that party's own witness, the court excluded the witnesses offered for impeachment purposes on the basis of State v. Smith, 573 So.2d 306 (Fla. 1990), reasoning that, under the guise of impeachment, Czubak was in reality offering the impeaching witnesses' hearsay testimony as substantive evidence of Ragsdale's confessions. Czubak's counsel then slightly altered his tactics, arguing that under Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), Czubak had a fundamental right to present any witnesses crucial to his defense, and to deny him that right was to deny him due process.
While we might be inclined to agree with Czubak, there is a circumstance in this case that prevents us from doing so. The trial judge in Czubak's second trial, after carefully reviewing the statements of the witnesses to Ragsdale's purported "confessions," found not only that there were no corroborating circumstances showing the trustworthiness of the statements, to the contrary she found the circumstances such as to render the statements unreliable and unworthy of trust. Chambers recognizes the necessity that an accused seeking to exercise his right to present witnesses in his own defense "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." 410 U.S. at 302, 93 S.Ct. at 1049, 35 L.Ed.2d at 313. The court in Chambers (which is procedurally similar to Czubak's case) found: "The hearsay statements involved in this case were originally made and subsequently offered at trial under circumstances that provided considerable assurance of their reliability." 410 U.S. at 300, 93 S.Ct. at 1048, 35 L.Ed.2d at 311-312. The evidence in Czubak's case amply supports the findings of the trial judge that the proffered witness statements were, contrary to the finding in Chambers, unreliable. Had the trial judge not made such a finding of unreliability, we would conclude, regardless of the provisions of section 90.804, that Chambers requires the admission of such reliable hearsay statements of witnesses to a third party confession even if the "confessor" was available as a witness at the trial. See also Lightbourne v. State, 644 So.2d 54 (Fla. 1994); Johnson v. State, 647 So.2d 106 (Fla. 1994), Harding, J., concurring in part, dissenting in part.
We affirm Czubak's conviction and sentence.
RYDER, A.C.J., and PATTERSON, J., concur.