876 So.2d 13 (2004)
Juan Tirrell CURTIS, Appellant,
v.
STATE of Florida, Appellee.
No. 1D02-4563.
District Court of Appeal of Florida, First District.
May 18, 2004.
*15 Nancy A. Daniels, Public Defender and Glenna Joyce Reeves, Assistant Public Defender, Tallahassee, for Appellant.
Charles J. Crist, Jr., Attorney General and Charlie McCoy, Senior Assistant Attorney General, Office of the Attorney General, Tallahassee, for Appellee.
PADOVANO, J.
The defendant, Juan Curtis, appeals his convictions for first-degree murder and armed robbery. We conclude that the trial court erred in excluding evidence that another person had confessed to the crime. Although the confession does not meet all of the technical requirements of the declaration against penal interest exception to the hearsay rule, it was admissible in evidence as a matter of constitutional law. Under the circumstances of this case, the exclusion of the confession violated the defendant's right to due process of law. *16 For these reasons, we reverse the convictions and remand the case for a new trial.
Juan Curtis was the second suspect tried for the robbery and murder of Mary Ann Stephens. The state originally claimed that a juvenile named Brenton Butler had committed the crimes. Butler had been identified by the victim's husband and he had confessed to police officers that he shot Mrs. Stephens. The case against Butler proceeded to trial, but he was acquitted. Subsequently, the state accused Curtis and another man, Jermel Williams, of the robbery and murder of Mrs. Stephens. Williams entered a plea to a reduced charge and became a witness for the state.
Before Curtis' trial, the state moved to exclude the evidence that Brenton Butler had confessed to the crimes. The state argued that Butler's confession was not admissible as a declaration against penal interest because he was available to testify. Butler had given a deposition in which he repudiated his earlier confession and denied that he shot Mrs. Stephens.
Curtis' lawyer objected to the exclusion of Butler's confession to the police. He argued that under the circumstances of the case, the exclusion of the confession would deprive him of his constitutional right to a fair trial. Curtis intended to raise a reasonable doubt by presenting evidence that Butler was the one who committed the crime, and Butler's confession was to be an important link in that defense. The trial judge agreed with the state and excluded the evidence of Butler's confession.
By agreement of counsel, the jurors in Curtis' case were told that Butler was originally charged with the murder of Mary Ann Stephens, that he went to trial, and that he was acquitted. The jurors were also told that Butler filed a lawsuit against the City of Jacksonville alleging that he had been mistreated by the police, and that he was awarded a sum of money as a result of the suit.
In the state's case in chief, the prosecutor called James Stephens, the victim's husband. Mr. Stephens testified that the crimes were committed on the morning of May 7, 2000, as he and his wife were walking back to their motel room after breakfast. They were approached by a man who demanded Mrs. Stephens' purse. Mrs. Stephens backed away from the man, and he pulled a pistol out of his pocket and shot her in the eye. Mr. Stephens described the assailant as a young black man wearing cut off jeans and sneakers in two or three colors of blue. He added that the man was young, about twenty or twenty-one, with very skinny legs.
When asked if he could identify the man who shot his wife, Mr. Stephens said that he could make an identification if he could see the man's legs. At that point, the prosecutor had the defendant Curtis show his legs to the witness and to the jury. Mr. Stephens then identified Curtis as the man who shot his wife. He added that he also recognized Curtis by his face.
On cross-examination, Mr. Stephens conceded that he had originally identified Brenton Butler as the man who shot his wife. He admitted that he had told police officers he was positive Butler was the one, and that, even after Butler's acquittal, he expressed his belief that he had not been mistaken in his identification. Defense counsel also established that, after the Butler trial, police officers showed Mr. Stephens several photographs, including a photo of the defendant Curtis. He did not identify Curtis as the assailant at that time.
Jermel Williams testified that he and Curtis were using cocaine on the morning of May 7, 2000. When they ran out, they decided to rob someone to purchase more. *17 According to Williams, Curtis said that he was going to snatch a purse. Williams stayed in the car but he gave Curtis his gun, a loaded.38 derringer. About fifteen minutes later, Curtis returned to the car and said, "Drive." As they were driving away, Curtis told Williams that, when he snatched the purse, the lady threw coffee on him and the gun went off. They then threw the purse in a dumpster.
Williams told the jury that he had no agreement with the state, and he denied that he had been promised a lighter sentence in return for his testimony against Curtis. He also denied that he was testifying for the state in the hope of receiving a lighter sentence. Although the jurors did not know his fate, Williams later entered a plea to the reduced charge of second-degree murder and was sentenced to ten years in the Department of Corrections.
Mrs. Stephens' purse was recovered from a dumpster, but not as a result of any information provided by Jermel Williams. It had been discovered and turned over to the police much earlier by two people who were evidently looking through the dumpster for aluminum cans. A police technician discovered that there was a latent fingerprint of value on a plastic telephone card contained in the purse. At trial, a fingerprint expert testified that the print was made by the defendant Curtis.
The state also called a jail inmate, William Johnson, who testified that Curtis had told him that he was the one who shot Mrs. Stephens. At the time of the alleged confession, Curtis was in custody on an unrelated charge. The version of the events recounted by Johnson was similar to the one given by Jermel Williams. According to Johnson, Curtis said that the woman threw coffee at him, and when the coffee hit his neck, the gun went off.
Johnson was facing a possible thirty-year sentence on a charge of sale of cocaine, and he had an offer from the state to plead to fifteen years as a habitual offender. He came forward with the information about Curtis on January 9, 2001, the second day of his own trial. At that time, he entered an unconditional plea of guilty to sale of cocaine, and his sentence was deferred. He remained in the county jail until the Curtis trial. Several days after the trial, he was sentenced to one year in the county jail. With accrued credit, he was released immediately.
The prosecutor called the defendant's brother, Antoine Bryant, but was unable to get him to repeat the testimony he had previously given to the grand jury. Because Bryant was evasive, the trial judge allowed the prosecutor to read portions of his previous grand jury testimony. The gist of this testimony was that Jermel Williams told Bryant that he and Curtis had robbed a woman, and Curtis got mad at Williams for telling the story. Bryant questioned Curtis about Williams' statement, and Curtis generally admitted to Bryant that he had committed a robbery.
In his defense, Curtis presented evidence that Mr. Stephens had originally identified Brenton Butler. Officer Thomas Martin of the Jacksonville Sheriff's Office testified that he had observed Butler walking near the scene of the crime and that he detained him for a show-up identification. According to Officer Martin, Mr. Stephens said that "there was no doubt in his mind" that Butler was the shooter. Butler was wearing a pair of shoes that matched the description Mr. Stephens had previously given, and he had $91 in his pocket.
Officer James Williams of the Jacksonville Sheriff's Office was also present during the show-up identification of Brenton Butler. Officer Williams said that he asked Mr. Stephens, "Are you absolutely sure if this is the individual that you feel *18 shot your wife?" Stephens said, "Yes, I am." According to Officer Williams, Mr. Stephens then emphasized the point by saying, "I'm not going to send an innocent man to jail."
At this point in the trial, counsel for the defendant proffered Brenton Butler's confession. Officer Williams testified in the proffer that Butler had been advised of his rights and that, at first, he denied that he had anything to do with the murder. When the police officers informed him that he had been identified by the victim's husband, he started crying and said, "If that's the case, I need a lawyer." Butler asked to speak with the officers again that afternoon, but again he denied that he had committed the offense. Later in the afternoon, Butler told the officers that he had shot the victim by accident. He said that he put the gun inside the purse and threw the purse into the woods near the motel. The officers went with Butler to search the woods for the purse but did not find it.
After they returned, Butler made a written confession, which differed in some details from his oral confession. In this confession, he said that he was hungry and had no money, so he decided to approach Mr. and Mrs. Stephens to ask them if they had any spare change. Mrs. Stephens gave him a mean look and mumbled a racial slur under her breath. This made him angry, so he demanded her wallet. Mrs. Stephens did not move fast enough, so he pulled out a chrome revolver that he had found several days earlier. He raised the gun to her face quickly and it went off. Then he panicked and grabbed her purse and ran. He told the officers that he had kept the money and that he had placed the purse with the gun inside it on a truck in traffic.
Counsel for the defendant renewed the arguments made before trial in opposition to the state's motion in limine and added a new argument that the confession should be admitted to corroborate other defense evidence. The trial judge adhered to his earlier ruling and held that the proffered confession by Brenton Butler was inadmissible in evidence.
After the defense rested its case, the state called several rebuttal witnesses who testified that Butler could not have been present at the scene when the murder was committed. Brenton's father, Andre, testified that he had heard Brenton playing music in his room on the morning of May 7, 2000, and that he was there until about 10:25 a.m., when he and his wife went to church. He also explained that the $91 in cash Brenton had in his possession at the time of his arrest was a payment for his work at a Burger King and that it did not come from the robbery. Brenton's mother, Melissa, and his brother, Brandon, also testified that Brenton was home at the time of the murder.
The jury found the defendant Curtis guilty of first-degree murder and armed robbery. A few days later, the trial court adjudicated him guilty and sentenced him to life on the murder charge and fifty years on the robbery charge. Curtis then filed a timely appeal to this court.
We have been asked to consider one argument for reversal. Curtis contends that the trial court deprived him of the right to due process of law by excluding Butler's confession from evidence. This argument is made with an acknowledgment that Butler's confession did not meet the formal requirements of the declaration against penal interest exception to the hearsay rule. Section 90.804(2)(c), Florida Statutes (2001) excludes from the hearsay rule:
[a] statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest *19 or tended to subject the declarant to liability or to render invalid a claim by the declarant against another, so that a person in the declarant's position would not have made the statement unless he or she believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement.
However, this exception is applicable only when the declarant is unavailable as a witness. See § 90.804(2), Fla. Stat. (2001). Because Butler was available, his earlier statement to the police could not be admitted as a declaration against penal interest.
If the directions we have received from the state legislature regarding the admission of evidence were all that we had to consider, the argument made here would be at an end. But the courts must also consider the constitutional effect of excluding evidence in a criminal trial. In some cases, judges have a duty to admit evidence that does not fit neatly within the confines of the Evidence Code in order to protect the defendant's right to a fair trial.
This concept is well established in the law. For example, in Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that a defendant had a constitutional right to impeach a juvenile by showing that he was on probation, even though an Alaska statute prohibited disclosure of that fact. As Chief Justice Burger explained, "The accuracy and truthfulness of [the juvenile's] testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of [the juvenile's] vulnerable status as a probationer, as well as of [the juvenile's] possible concern that he might be a suspect in the investigation." Davis, 415 U.S. at 317-318, 94 S.Ct. 1105 (citation and footnote omitted). In the circumstances presented in Davis, the Court concluded that the state's right to protect the confidentiality of juvenile records must give way to the defendant's Sixth Amendment right to confront his accusers.
The general principle that state evidence rules must, in some instances, yield to greater principles established by the Constitution has been applied specifically to require the admission of a confession by a third party. In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), the Supreme Court concluded that the defendant should have been allowed to present evidence that someone else had confessed to the crime. The defendant, Chambers, was on trial for murder. Another man, Gable McDonald, had made a series of oral confessions to the crime several hours after it was committed. Later McDonald repudiated these confessions. Chambers called McDonald as a witness, but he was not permitted to confront him with the oral confessions.
At the time of Chambers' trial, Mississippi had a declaration against interest exception to the hearsay rule, but it applied only to statements against pecuniary interest, not to statements against penal interest. McDonald's confessions therefore did not qualify under the exception. Mississippi also had a "voucher rule," which prohibited a party from impeaching his own witness. This rule effectively thwarted Chambers' effort to force an admission that McDonald had made a series of oral confessions to the crime. When McDonald was called as a witness at trial, he denied that he had committed the crime, and Chambers was required under the voucher rule to accept his testimony.
The Supreme Court concluded that McDonald's oral confessions should have been *20 admitted in evidence, despite the fact that they were inadmissible under state law. The Court reasoned that the exclusion of the confessions denied Chambers the right to due process of law, as well as the right to confront the witnesses against him. The Court rejected the state's argument that the confessions were inadmissible under the Mississippi hearsay rule, stating that "the hearsay rule may not be applied mechanistically to defeat the ends of justice." Chambers, 410 U.S. at 302, 93 S.Ct. 1038.
Likewise, the Court rejected the state's argument that the confessions could not be admitted on direct examination under the Mississippi voucher rule. On this point the Court said, "The `voucher' rule, as applied in this case, plainly interfered with Chambers' right to defend against the State's charges." Chambers, 410 U.S. at 298, 93 S.Ct. 1038.
The Court emphasized that, although McDonald's confessions were hearsay, they were made and subsequently presented at trial "under circumstances that provided considerable assurance of their reliability." Chambers, 410 U.S. at 300, 93 S.Ct. 1038. In support of this conclusion, the Court listed four factors that supported the reliability of McDonald's confessions: (1) each of the confessions was made spontaneously to a friend shortly after the murder was committed; (2) the confessions were corroborated by other evidence; (3) the confessions truly were statements against McDonald's penal interest; and (4) McDonald was available to testify and could have been cross-examined by counsel for the State. See Chambers, 410 U.S. at 300-301, 93 S.Ct. 1038.
Florida allows litigants to impeach their own witnesses, but that does not necessarily resolve the constitutional problem identified in Chambers. Although a witness may be impeached in Florida by "[a]ny party, including the party calling the witness," pursuant to section 90.608, Florida Statutes, it is still improper under Florida law for a party to call a witness merely as a device to place the impeaching testimony before the jury. See Morton v. State, 689 So.2d 259 (Fla.1997), receded from on other grounds by Rodriguez v. State, 753 So.2d 29 (Fla.2000). In the present case, Butler testified in his deposition that he did not shoot Mrs. Stephens and that his earlier confession was false. As it turned out then, Curtis was no better off than Chambers. He was precluded, albeit for a slightly different reason, from calling the declarant to the witness stand and confronting him with the confession.
Nor is the due process problem identified in Chambers resolved merely because Florida recognizes an exception to the hearsay rule for declarations against penal interest. If a confession by a third party is critical evidence that should have been admitted in evidence to protect the constitutional rights of the accused, the particular reason for excluding it under state law will make little difference. If the confession was excluded on the ground that it did not meet the requirements of the declaration against penal interest exception, the effect would be the same as if there were no exception at all. Here again, Curtis was no better off than Chambers. It did not help him that Florida generally recognizes an exception for declarations against penal interest, because the exception could not be employed under the facts of his case.
Indeed, the Florida courts have consistently applied the constitutional analysis in Chambers, despite the exception in section 90.804(2)(c), Florida Statutes, for declarations against penal interest. See Grim v. State, 841 So.2d 455, 464 (Fla.2003); Sliney v. State, 699 So.2d 662, 670 *21 (Fla.1997); Gudinas v. State, 693 So.2d 953, 965 (Fla.1997); Hartley v. State, 686 So.2d 1316, 1321 (Fla.1996); Lightbourne v. State, 644 So.2d 54, 57 (Fla.1994). As these opinions implicitly recognize, a trial judge may be required to admit a third-party confession under constitutional principles, even if it does not qualify as a declaration against penal interest under the state law of evidence.
Federal courts have come to the same conclusion. Rule 804(b)(3) of the Federal Rules of Evidence establishes an exception to the hearsay rule for declarations against penal interest. Nevertheless, the federal courts continue to apply the principle in Chambers to determine whether the exclusion of a confession as hearsay deprives the defendant of the right to due process of law. See, e.g., Carson v. Peters, 42 F.3d 384, 387 (7th Cir.1994); United States v. Thomas, 62 F.3d 1332, 1338 (11th Cir.1995).
Like the confessions in Chambers, the confession in this case was made under circumstances that provided an assurance of reliability. The first point the Court made in Chambers was that the confessions were spontaneous. By this, the Court did not mean that the statements had been blurted out, but rather that they were made without any compulsion and without any apparent motive to lie. The same is true of Butler's confession in this case. He made the confession just a few hours after the murder. The police officers had advised him of his right to remain silent several times, and there is no evidence that they intimidated him.[1]
As several courts have observed, a confession made to a police officer may be considered reliable, because it subjects the declarant to prosecution. See Cunningham v. Peters, 941 F.2d 535, 540 (7th Cir.1991); Rivera v. Director, Dep't of Corrections, 915 F.2d 280, 282 (7th Cir.1990); People v. Kokoraleis, 149 Ill.App.3d 1000, 1020-21, 103 Ill.Dec. 186, 501 N.E.2d 207, 221 (1986); see also Jones v. State, 709 So.2d 512, 525 (Fla.1998) (equating a confession made to police with a confession made spontaneously to a friend). We would be more concerned if Butler had been bragging to his friends, or if he had something to gain by his statement, or if he had been threatened or coerced in some way. But the record does not disclose the presence of any of these factors. Butler confessed to police officers, knowing that they were not there to help him and with full knowledge of the consequences.
The second factor the Court relied on in Chambers was that the confessions were corroborated by other evidence. Butler's confession meets that test, as well. The confession is corroborated by the fact that Mr. Stephens positively identified Butler as the assailant. To dismiss this evidence, we would have to assume that Butler not only falsely confessed to murder, but, by some tragic coincidence, he was also mistakenly identified as the killer by an eyewitness to the murder. Under the circumstances, we think that Mr. Stephens' identification was powerful corroborating evidence. In fact, it would be difficult to imagine a better case for corroboration of a confession than an eyewitness identification of the person who confessed.
*22 There is also little question that Butler's confession meets the third part of the test in Chambers, in that it was truly a statement against penal interest. The state does not contest this point. Butler did not attempt to shift part of the blame to someone else. Nor was the statement one that merely implied that Butler was guilty. Butler categorically stated that he was the one who shot Mrs. Stephens. There can be no doubt that this statement was inculpatory.
The final part of the test in Chambers, that the witness is available for cross-examination, is the most perplexing. Section 90.804(2) provides that a declaration against penal interest is admissible if the declarant is unavailable. This requirement is also found in rule 804(b)(3) of the Federal Rules of Evidence and in typical exceptions in other states. The apparent reason for the unavailability requirement is that the hearsay statement is needed all the more if the declarant is not there to testify. See McCormick on Evidence § 253 (John W. Strong ed., 5th Ed.1999). In contrast, the Supreme Court said in Chambers that a court may be required to admit a confession by another person, despite the hearsay rule, if that person is available to testify. The Court reasoned that the opposing party could then confront the witness to uncover a possible explanation for the confession.
These requirements appear to be irreconcilable. If the declarant is available to testify, the confession does not qualify as a declaration against penal interest and it is excluded because it is hearsay. Yet, all other things being equal, the availability of the declarant might be the very thing that requires the court to admit the confession as a matter of constitutional law, despite the Evidence Code.
We have been unable to find the answer to this riddle in any of the court opinions addressing the Chambers case in the context of the declaration against penal interest exception to the hearsay rule.[2] All we can say for certain is that availability is a key element in the constitutional argument for admitting a confession by another person. That is what the Court said in Chambers, and we are not at liberty to disagree.
Other Florida courts have also concluded that the availability of the declarant does preclude the admission of a third-party confession under constitutional principles. In Czubak v. State, 644 So.2d 93, 95 (Fla. 2d DCA 1994), for example, the court noted that, regardless of the provisions of section 90.804, Chambers"requires the admission of such reliable hearsay statements of witnesses to a third-party confession even if the `confessor' was available as a witness at the trial." (emphasis added). The fact that Butler was available to testify and subject to cross-examination by the state supports the argument made here that his confession should have been admitted as a matter of constitutional law.
The state argues that Butler's confession was not reliable, because some of the facts were contradicted by other evidence. This argument misses the point. It is true that certain aspects of Butler's statement, such as the location of the purse and the kind of weapon used, were inconsistent with other facts, but the question is not whether there is some evidence casting doubt on the confession. Rather, *23 the question is whether there is substantial evidence to corroborate the confession. See Rivera, 915 F.2d at 282; United States ex rel. Gooch v. McVicar, 953 F.Supp. 1001, 1009 (N.D.Ill.1997). If so, the confession should be admitted in evidence, and the jurors should be allowed to consider the alleged discrepancies, along with the evidence of corroboration.
In our view, the argument for admitting the confession in this case is even stronger than the one presented in Chambers. The third-party confession in Chambers was offered exclusively by the defense and was never endorsed as reliable by the state. In contrast, Butler's confession was previously offered by the state as evidence against Butler in his own trial. The prosecutor must have believed then that Butler's confession was reliable. Now the state argues that the confession fails to meet the test of Chambers because it is unreliable, but the state is plainly not in a good position to make this argument. A prosecutor cannot rely on evidence to obtain a conviction in one case, and then condemn the very same evidence as unreliable in another. Of course, a fact that came to light between the two trials may have changed the prosecutor's view of Butler's confession. That may be what happened here, but there is no indication of it in the record.
We have considered the possibility that the admission of Butler's confession would ultimately make Butler the main feature of Curtis' trial. The short answer to this potential criticism is that he was already a necessary feature of the trial, given the nature of the defense. Curtis presented evidence that Mr. Stephens had identified Butler, and the state countered that evidence by providing an alibi for Butler. Perhaps if Butler had been called to testify, he would have said that his confession was false and that he was telling the truth when he recanted it. But we could not say that a confession is neutralized merely because it was recanted. It is likely that most jurors would put greater weight on the confession than the subsequent recantation. We have no doubt that, if the defendant were the one who had confessed and then subsequently recanted his confession, the state could make a very effective argument to minimize the recantation.
Taking all of the relevant factors into consideration, we conclude that the exclusion of Butler's confession denied the defendant his right to a fair trial. The jurors heard a great deal of evidence relating to Butler's guilt or innocence. They heard from the defense that Mr. Stephens originally identified Butler as the shooter and that he was positive in his identification. They heard from the state that Butler could not have committed the crime, because he was home with his family at the time. The only thing the jurors did not hear is that Butler had confessed to the crime. Under the circumstances, this was a critical piece of evidence. Without it, the jurors could not have considered the remaining facts in a proper context.
Reversed and Remanded.
BROWNING, J., concurs.
BOOTH, J., dissents with opinion.
BOOTH, J., dissenting.
I find no reversible error in the trial court's exclusion of the evidence in question and would affirm the judgment of conviction below.
NOTES
[1] We are aware of the fact that Brenton Butler's treatment by the Jacksonville Sheriff's Office became the subject of a serious public controversy. However, it would not be appropriate for us to take into account the news articles written about the case in evaluating Butler's confession. Our conclusions are necessarily based on the evidence presented in the record. There was no evidence presented to the jury in Curtis' case to prove or even suggest that Butler's confession was coerced.
[2] At least one other court has noted that availability is treated as a positive factor in Chambers but as a negative factor in the declaration against penal interest exception to the hearsay rule. See United States v. MacDonald, 688 F.2d 224, 232 n. 13 (4th Cir.1982). The court did not attempt to explain why that is the case.