BROWNING, J.,
dissenting.
In Ramirez, 739 So.2d at 568, the Florida Supreme Court held that whether a juvenile’s confession is voluntary after a waiver of Miranda rights is controlled by a “totality of the circumstances” test. Because I believe the totality of the circumstances precludes admission of Appellant’s statements of January 6, 2005, January 18, 2005, and June 16.2005, I must dissent.

Ramirez

In Ramirez the court addressed a juvenile’s waiver of Miranda rights as follows:
The “totality of the circumstances” to be considered in determining whether a waiver of Miranda warnings is valid based on the two-pronged approach of Moran [v. Burbine, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ] may include factors that are also considered in determining whether the confession itself is voluntary. See Sliney [v. State], 699 So.2d [662] at 669 [ (Fla.1997) ]; see also State v. Sawyer, 561 So.2d 278, 284-85 (Fla. 2nd DCA 1990). The factors that we consider relevant here include: (1) the manner in which the Miranda rights were administered, including any cajoling or trickery; see Miranda, 384 U.S. at 476, 86 S.Ct. 1602; Brewer v. State, 386 So.2d 232, 237 (Fla.1980); (2) the suspect’s age, experience, background and intelligence, see State v. S.L.W., 465 So.2d 1231, 1232 (Fla.1985) (quoting Fare [v. Michael C.], 442 U.S. [707] at 724-25, 99 S.Ct. 2560, 61 L.Ed.2d 197 [ (1979) ]); Doerr v. State, 383 So.2d 905, 907 (Fla.1980); (3) the fact that the suspect’s parents were not contacted and the juvenile was not given an opportunity to consult with his parents before questioning, see Doerr, 383 So.2d at 907; (4) the fact that the questioning took place in the station house, see Drake [v. State], 441 So.2d [1079] at 1081 [ (Fla.1983) ]; and (5) the fact that the interrogators did not secure a written waiver of the Miranda rights at the outset, see Sliney, 699 So.2d at 669 n. 10; Traylor, 596 So.2d at 966.
Ramirez, 739 So.2d at 575.

January 6, 2005 Statement

First, and of overarching importance, the state blatantly failed to comply with section 985.207(2), Florida Statutes (2005).[1] *640 The record reveals no attempt by the Sheriffs Department to contact Appellant’s parents when he was taken into custody, or at anytime thereafter. In Ramirez, when addressing a similar, but less egregious, failure, the court pointed out “the statute [39.037(2) ] would be rendered meaningless if all that is required are perfunctory attempts to contact a juvenile’s parents” and “the State ... must bear the burden of demonstrating statutory compliance.” Ramirez, 739 So.2d at 578. Alarmingly, the Sheriffs Department did not attempt any contact with Appellant’s parents, in contrast to a telephone message left on the defendant’s parents’ answering machine in Ramirez. In fact, during Appellant’s long incarceration before trial (six months), the record is silent as to whether Appellant’s parents were ever contacted by the authorities. Under Ramirez it is the State’s burden to prove record compliance with section 985.207(2), and it utterly failed to do so, or even attempt to do so, for that matter. In my view, this factor alone compels reversal, but even assuming arguendo that it does not, I find other circumstances that augment that failure and, under the “totality of the circumstances” test certainly compel reversal of Appellant’s conviction.
That next deficiency occurred when Appellant unequivocally asserted his right to counsel by stating he would “not answer questions without my lawyer.” At that point in time, the deputies should have ceased questioning Appellant until a lawyer was appointed. Spradley v. State, 442 So.2d 1039, 1042 (Fla. 2nd DCA 1983). Nor can the State plausibly maintain, as determined by the majority opinion, that Appellant’s election of counsel was not unequivocal, because Sgt. Tummond made the following record statement to Appellant:
I’m not asking nothing [sic] about your case or what the charges — you already said you don’t want nobody to say nothing.
You have the right to have an attorney here before you’re asked any questions. Earlier you said you did leant one before any questions ivere asked.
(underlining added). This exchange vividly reveals what Sgt. Tummond knew before Appellant made his statement adverse to his interest. Accordingly, Sgt. Tum-mond and the other deputies present should have stopped and provided Appellant with counsel right then and there. For this failure, Appellant’s statements should be inadmissible.

Statement of January 18, 2005

Appellant’s statement of January 18, 2005, is inadmissible, just like his January 6, 2005, statement, and the trial judge should have excluded it. This statement was given after Appellant asked for a .meeting and offered to tell the State the location of the murder weapon in exchange for a visit with his mother and a haircut. Before consummating this exchange, Capt. Bastak asked Appellant if he had an attorney. When Appellant told him the attorney who had contacted him (presumably a public defender) would not be representing him, Bastak told him “you technically have an attorney” and proceeded to take Appellant’s statement. How a defendant “technically has an attorney” is a mystery to me. It is apparent from the record that the public defender’s office had a conflict and never intended to represent Appellant. The public defender’s office was at that very time representing co-defendants, who as early as January 5, 2005, had “fingered Appellant” as the shooter and were busy seeking to mitigate their sentences’ severity by giving adverse testimony against Appellant. However, despite this obvious conflict, a “conflict attorney” was not ap *641 pointed for Appellant until May 19, 2005, a useless gesture by that time because Appellant’s statements already had been given.

Statement of June 6, 2005

Finally, I would suppress Appellant’s June 6, 2005, letter to the trial judge. The letter represented a pro se filing when Appellant was represented, finally, by conflict-free counsel. The letter should have been rejected and returned, as a pro se filing is not acceptable when a defendant is represented by counsel. See Logan v. State, 846 So.2d 472, 479 (Fla.2003); Mourra v. State, 884 So.2d 316, 320-21 (Fla. 2nd DCA 2004).

General Consideration

A new trial, in this circumstance because of Appellant’s alleged heinous acts, is sure to raise a “hue and cry” that a known criminal is being released on a technicality. However, a recent Duval County case that drew the attention of this Court, and the public, reveals the reasons for a strict application of Ramirez to a juvenile’s confession after a waiver of Miranda, rights, and the mischief that can flow from a failure to do so. See Curtis v. State, 876 So.2d 13 (Fla. 1st DCA 2004). Before Curtis was charged, a fifteen-year-old juvenile, Brenton Butler, was charged with killing the same woman during an armed robbery. Butler was identified as the killer by the deceased woman’s husband, an eyewitness. Butler was induced to waive his Miranda. rights after the police violated section 39.037(2), Florida Statutes, by failing to call Butler’s parents, as here; and Butler later confessed to the murder. At trial, Butler’s confession was deemed voluntary over objection, admitted as evidence, and presented to a jury that had the good judgment to acquit him. In all probability, a guilty verdict would have resulted in the destruction of Butler’s meaningful life. However, to the credit of the jury, and not of the judiciary, a great injustice was avoided, as revealed by subsequent events. After Butler’s acquittal, the real perpetrator of the murder was identified, tried, and found guilty of the murder on irrefutable hard forensic evidence. See Curtis.
This occurrence is a prime example of why Ramirez should be strictly applied without hesitation here. One cannot know whether Appellant is innocent, as was Butler; however, I can assert that due process, the right to counsel, calling a juvenile’s parents as required, and giving Miranda warnings should be strictly required for the reasons exhibited by the misdeeds surrounding the Butler prosecution, and these requirements were violated here. Our system is designed to free the innocent and not secure convictions by recognized unreliable procedures, as were applied here.
In my view, although I think Ramirez requires reversal, a minor’s confession should be considered involuntary and inadmissible as a matter of law unless a parent, guardian, or counsel is present and consents to a waiver of his or her Miranda rights. Florida law, on the one hand, will not allow a juvenile to contract for goods and services, but will allow the same juvenile to “contract” away his Miranda rights, a far more serious consequence in most circumstances. See Chap. 743, Fla. Stat.; Gautier v. Bradway, 87 Fla. 193, 99 So. 879 (1924). Surely, if Miranda rights mean anything, a juvenile should not be allowed to waive them absent the consent of a parent, attorney, or legal guardian. A minor’s natural immaturity is recognized when contracting for goods and services, and it is common knowledge that a judgmental imbalance exists when a minor is dealing with an adult, and especially with a police officer. Surely, due process rights are just as important as the right to contract. That imbalance should be recog *642 nized and respected when Miranda rights are waived, just as in the case of a contract. In my view, one day this will be the law, because allowing a juvenile to confess to a crime after individually waiving his or her Miranda warnings is inconsistent with what we all know to be the status of human behavior and the fair administration of justice and due process.
For these reasons, I would grant Appellant a new trial and mandate exclusion from evidence Appellant’s statements of January 6, 2005; January 18, 2005; and his letter of June 6, 2005. Thus, I dissent from this Court’s failure to do so.

. Formerly section 39.037(2), Florida Statutes. See 1997 Fla. Laws, c. 97-238, § 15.