*657 WALLACE, Judge.
Joseph Eli Bearden challenges his judgment and life sentence for second-degree murder. On appeal, Bearden makes two closely related arguments. First, he argues that the trial court erred in refusing to allow a witness to testify that she heard Ray Allen Brown admit to committing the offense for which Bearden was convicted. Second, Bearden contends that the trial court erred in prohibiting him from questioning Ray Allen concerning Ray Allen’s purported declarations against penal interest.[1] We find no error and affirm Bear-den’s judgment and sentence. We write to explain our reasoning.
I. THE FACTS
The murder victim was a young man named Ryan Skipper. On March 14, 2007, his body was found on the side of Morgan Road in the Wahneta area — he had been stabbed to death. The evidence at trial reflected that on March 13, 2007, Skipper left home in his car after taking a telephone call at 11:10 p.m. Shortly thereafter, he encountered Bearden, who was walking on the side of the road. Skipper picked up Bearden and drove a few blocks to J.T. Brown’s home. While Skipper waited outside, Bearden went inside and unsuccessfully attempted to trade a used laptop computer for drugs. Present in the residence were J.T. Brown, Ray Allen Brown (J.T.’s son), John Kirchoff (who was temporarily living there), and William Brown (J.T.’s nephew). All four of these men were methamphetamine users.
The events that followed Skipper and Bearden’s arrival at the Brown residence led to Skipper’s murder. And there was no question that William Brown wielded the knife used to kill Skipper.[2] But, as discussed below, Bearden’s conviction hinged on whether the jury accepted his version of the events as reflected in his pretrial statement[3] or the version testified to by J.T., Ray Allen, and Kirchoff at trial. Bearden’s version implicated William and Ray Allen in the murder; J.T., Ray Allen, and Kirchoffs version implicated William and Bearden.
J.T., Ray Allen, and Kirchoff testified that after Bearden and Skipper arrived, the generator providing electrical power to the residence began to falter because it was low on fuel. They asked Skipper to drive to a nearby gas station to buy gas for the generator. According to them, Skipper was accompanied on this trip by William, Ray Allen, and Kirchoff. Skipper and the three men returned from the gas station without incident. Thereafter, William, Bearden, and Skipper left in Skipper’s car while Ray Allen remained at home for the rest of the night and went to sleep.
This testimony conflicted with Bearden’s pretrial statement that the trip to the gas station was a ruse to permit the Browns to rob Skipper. Bearden also claimed that only William and Ray Allen went with Skipper to buy gas and that they returned *658 alone in Skipper’s car. When they returned, the men and the car were covered in blood. Although Bearden acknowledged that he knew of the Browns’ plan to rob Skipper, he claimed to have no idea that they would kill him. He admitted that he and William cleaned the car and unsuccessfully attempted to sell it or trade it for drugs. But he denied assisting in Skipper’s murder or being present when Skipper was killed.
Thus the critical issue of fact at Bear-den’s trial was whether Skipper was stabbed on the trip to get gas, as Bearden claimed, or when Skipper drove away from the Browns’ residence after returning safely from that trip, as the State’s witnesses suggested. William — the person who actually stabbed Skipper — was in the car on both trips. If the killing occurred during the trip to the gas station, Ray Allen was directly implicated in the killing because he went along on that trip, but Bearden did not. If the killing occurred after Skipper left the Brown residence the second time with William and Bearden, then Bear-den was implicated and Ray Allen — who remained at the Brown residence and went to sleep — could not have had any direct involvement in the killing.
Skipper’s partially burned car was discovered near a boat ramp at a lake in the area. Law enforcement officers recovered several sets of fingerprints from the vehicle, including Bearden’s and William’s fingerprints. After law enforcement officers arrested Bearden, a grand jury indicted him for first-degree murder and robbery with a deadly weapon. The State sought the death penalty, but the jury’s verdict of second-degree murder eliminated the death penalty as a sentencing option.[4] On the count charging Bearden with robbery with a deadly weapon, the jury found him guilty of the lesser-included offense of grand theft of a motor vehicle. The trial court sentenced Bearden to five years in prison on the grand theft of a motor vehicle conviction, to run concurrently with his life sentence. Bearden does not challenge his conviction and sentence for grand theft of a motor vehicle.
II. THE PERTINENT EVENTS AT TRIAL
At issue in this appeal is the trial court’s exclusion of testimony that would have supported Bearden’s version of the events that led to Skipper’s death. Bearden’s case went to trial in February 2009, almost two years after the murder. On the second day of trial, the prosecutor’s office received a telephone call from a previously unknown witness, Angela Tyler, and the Sheriffs Office sent a detective to take her statement. Tyler told the detective that Ray Allen had admitted to her a few days after the murder that it was he, not Bear-den, who was with William in the car when William stabbed Skipper. The prosecution sent a copy of Tyler’s statement to defense counsel. The defense then notified the court of its intention to call Tyler as a defense witness, indicating that it planned to use her testimony to impeach the anticipated testimony of Ray Allen. The prosecution had planned to call Ray Allen as a witness in its case-in-chief. But after Tyler’s deposition was taken, the prosecutor announced that the State would not be calling Ray Allen as a witness. The State’s motive for this sudden change in its trial strategy was obvious. Ray Allen’s *659 testimony would be cumulative to that of J.T. and Kirchoff. Everyone expected Ray Allen to deny any involvement in Skipper’s killing, and the State did not wish to give the defense an opportunity to impeach him by asking him if he had made the purported statements to Tyler.
After the prosecution rested its case-in-chief without calling Ray Allen as a State witness, the defense announced that it would call him as a defense witness. The trial court cautioned that the defense could not call Ray Allen as a witness for the sole purpose of developing impeachable testimony. In addition, it instructed the defense that no questions could be asked about his purported statements to Tyler until her testimony had been proffered to the court.
Despite the trial court’s cautionary instruction, the defense called Ray Allen to the stand before proffering Tyler’s testimony. And, as discussed above, his testimony echoed that of the State’s witnesses, J.T. and Kirchoff, which was not helpful to the defense. In accordance with the trial court’s express ruling, defense counsel did not ask Ray Allen about his purported statements to Tyler. When Ray Allen left the witness stand, it was noted that he was “subject to recall.”
Later, the defense proffered Tyler’s testimony to the court. She testified that she knew Bearden and the Brown family, who lived down the road from her parents’ home. Tyler had maintained “a dating relationship ... [o]ff and on for about three years” with Junior Brown (J.T.’s son and Ray Allen’s brother).
According to Tyler, she met Ray Allen at her mother’s house on March 18, 2007. Ray Allen was upset, and she asked him what was wrong. Tyler gave the following account of Ray Allen’s response:
[Ray Allen] said that he had got — that he was with his cousin, [William]. [William] had gotten into a confrontation with a gay guy, and they had an argument, and he had stabbed the guy. And he was with his cousin when he did it.
[[Image here]]
... I had asked him if he was involved in the murder, or like the stabbing, because I didn’t know there was a murder at the time, and he said no, that he didn’t involve in the murder, I guess, or whatever. He said that he had to help his cousin, though, was his exact words, because they was family.
[[Image here]]
[Ray Allen] was just telling me about him and his cousin was in a vehicle with a guy, and the guy had tried his cousin, I guess like sexually, I don’t know. And his cousin had gotten upset and stabbed the guy. And that’s when he told me he was in the car when it happened.
After speaking with Ray Allen, Tyler had no doubt that he had admitted that he was with William and had helped him when Skipper was killed, even though he denied actually stabbing Skipper.
If Tyler’s testimony were true, then Ray Allen’s admissions inculpated him in Skipper’s killing. Although Bearden could not deny that he was involved in cleaning Skipper’s car and attempting to dispose of it, Ray Allen’s purported admissions would exonerate Bearden of any direct involvement in Skipper’s death.
After proffering Tyler’s testimony, the defense made two requests. First, it requested to recall Ray Allen to ask him whether he had made the purported statements to Tyler. Second, it requested to present Tyler’s testimony about the purported statements to the jury.
The trial judge found that the proposed evidence was inadmissible under the Evidence Code and indicated that it would *660 only be admissible if it met the four-part test of Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The trial judge outlined the four-part test of Chambers as follows: (1) the confession or statement was made spontaneously to a close acquaintance after the crime occurred; (2) the confession or statement is corroborated by other evidence in the case; (3) the confession or statement is self-incriminating and unquestionably against interest; and (4) if there is any question about the truthfulness of the confession or statement, the declarant must be available for cross-examination.
The trial judge reserved ruling on the defense’s requests so that he could consider them over the evening. The following day, the trial judge ruled that Ray Allen’s purported statements to Tyler met only the first and fourth parts of the Chambers test. In the trial judge’s view, the statements were not corroborated by other evidence in the case and were not against Ray Allen’s penal interest. The trial judge also denied the defense’s request to recall Ray Allen to ask him about his purported statements to Tyler. The trial judge concluded by stating, “I believe that we’ve eliminated Angela Tyler and Ray [Allen] Brown from being recalled.”
III. DISCUSSION

A. Calling Ray Allen Brown for Impeachment Purposes

We consider Bearden’s second argument first. Bearden contends that the trial court erred in refusing to permit him to recall Ray Allen to ask him about his purported statements to Tyler. But before the defense asked to recall Ray Allen, the trial court had ruled that — under the Evidence Code — the defense could not call Ray Allen for the sole purpose of developing impeachable testimony. Recalling Ray Allen for this purpose would only be permissible under a Chambers analysis.
Florida courts generally disapprove of calling a witness for the primary purpose of developing impeachment evidence. See Morton v. State, 689 So.2d 259, 264 (Fla.1997), receded from on other grounds by Rodriguez v. State, 753 So.2d 29, 47 (Fla.2000). However, “a party may always impeach its witness if the witness gives affirmatively harmful testimony.” Id.; see also § 90.608, Fla. Stat. (2008) (“Any party, including the party calling the witness, may attack the credibility of a witness by ... [i]ntroducing statements of the witness which are inconsistent with the witness’s present testimony.”). But even though section 90.608 permits a party to impeach its own witness, “it is still improper under Florida law for a party to call a witness merely as a device to place the impeaching testimony before the jury.” Curtis v. State, 876 So.2d 13, 20 (Fla. 1st DCA 2004) (citing Morton, 689 So.2d 259).
When Bearden’s trial began, Ray Allen was slated to appear as a witness for the prosecution. It was only after Tyler surfaced as a potential witness — almost two years after Skipper’s death — that the State lost interest in Ray Allen as a witness and the defense suddenly decided to present his testimony. As previously noted, Ray Allen’s testimony for the defense was cumulative to that of J.T. and Kirchoff and was simply not helpful to the defense. In seeking to recall Ray Allen, the defense was clearly not anticipating a dramatic, Perry Mason-style moment during which Ray Allen would confess that it was he and not Bearden who was present in the car when William stabbed Skipper to death. Undeniably, the defense’s sole reason for seeking to recall Ray Allen was to develop impeachable testimony. The trial court correctly ruled that the defense could not recall Ray Allen for this purpose unless *661 Tyler’s testimony was admissible under Chambers. This conclusion brings us to consideration of Bearden’s first point on appeal.

B. Admissibility of Angela Tyler’s Testimony under Chambers

Bearden argues that the trial court erred in excluding Tyler’s testimony that Ray Allen told her that he had helped William kill Skipper. Bearden contends that Tyler’s testimony was admissible under a proper Chambers analysis. Because this point presents a close question, a brief review of Chambers is in order.
Chambers was charged with murder but claimed that a person named McDonald was the actual perpetrator. Chambers, 410 U.S. at 289, 93 S.Ct. 1038. Because the prosecution did not call McDonald as a witness, Chambers called McDonald as a defense witness. Id. at 291, 93 S.Ct. 1038. As a result of Mississippi’s party witness rule (a rule that — similar to Florida law— prohibits a party from calling its own witness for the purpose of impeachment) and hearsay rules, Chambers “was unable either to cross-examine McDonald or to present witnesses in his own behalf who would have discredited McDonald[ ] ... and demonstrated his complicity.” Id. at 294, 93 S.Ct. 1038. The United States Supreme Court found that the application of these rules denied Chambers his due process right to a fair trial. Id. at 302-03, 93 S.Ct. 1038. With regard to the out-of-court statements against interest, the Supreme Court added that in certain circumstances, “where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice.” Id. at 302, 93 S.Ct. 1038.
The Supreme Court noted that the hearsay statements that Chambers tried to introduce into evidence were made “under circumstances that provided considerable assurance of their reliability.” Id. at 300, 93 S.Ct. 1038. In Chambers, McDonald had confessed to three close acquaintances, the confessions were spontaneous, the confessions were corroborated by other evidence, and the statements were self-incriminatory and against McDonald’s penal interest. Id. at 300-01, 93 S.Ct. 1038. Although there was a great deal of other corroborating evidence, the Supreme Court said that “[t]he sheer number of independent confessions provided additional corroboration for each.” Id. at 300, 93 S.Ct. 1038.
The Supreme Court’s holding in Chambers may be reasonably interpreted as calling for a four-pronged test to determine the admissibility of hearsay evidence of an out-of-court confession: (1) the statement must be spontaneous, (2) there must be some external corroboration for the statement, (3) the statement must be against the declarant’s penal interest, and (4) the declarant must be available to testify. See, e.g., Curtis, 876 So.2d at 21-22. But Chambers does not necessarily establish an immutable checklist of four requirements. Instead, the primary consideration in determining admissibility is whether the statement bears sufficient indicia of reliability:
Out-of-court statements are traditionally excluded because they lack the conventional indicia of reliability: they are usually not made under oath or other circumstances that impress the speaker with the solemnity of his statements; the declarant’s word is not subject to cross-examination; and he is not available in order that his demeanor and credibility may be assessed by the jury. A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability *662 and thereby compensate for the absence of the oath and opportunity for cross-examination. Among the most prevalent of these exceptions is the one applicable to declarations against interest— an exception founded on the assumption that a person is unlikely to fabricate a statement against his own interest at the time it is made.
Chambers, 410 U.S. at 298-99, 93 S.Ct. 1038 (footnote omitted) (citation omitted). In any case, the four-pronged test provides a helpful framework for the analysis of specific cases.
Here, the trial court held that Bearden had met prong one (spontaneous statement) and prong four (declarant available to testify). However, the trial court also found that Bearden had not met either prong two (corroboration) or prong three (declaration against penal interest). With regard to the third prong, the trial court explained its reasoning as follows:
Here, the statement was made to an alleged acquaintance, not the police. Two, the statement is shifting the burden. It’s not saying I killed him, he said [William] Brown killed him.
[[Image here]]
... [T]he statements that [Tyler] alleged he made that could be considered against penal interest was, he’s, he’s kin, and I helped him. And some of these cases talk about it can’t be something vague. It must be truly against penal interest. I helped him, with nothing more than that, that’s not chargeable.
... So I don’t see any corroboration to what he admits could be considered a statement against interest.
I don’t believe it’s based on that, that it is, in fact, truly a statement against interest. I go back to the case that I rely on that Butler[5] didn’t merely imply guilt, he said I killed him. In Chambers, the case that — that this exception was created out of, he admitted he killed him. And, in fact, in every single case I’ve read, the party making the statement admitted to substantial involvement, not some vague involvement that he’s kin, and I helped him.
[[Image here]]
... I don’t think this was truly a statement that could be considered against his penal interest because without substantially more than what we heard yesterday [at the proffer], I don’t believe there’s any way the state, or Mr. Brown, could believe that his statement was against his penal interest, or that the state could bring charges against him.
On this point, we disagree with the trial court’s conclusion.
In reaching its conclusion, the trial court relied on the vague nature of the remarks attributed to Ray Allen and on the absence of a detailed explanation concerning how Ray Allen had actually assisted William in killing Skipper. The trial court’s reasoning is surprisingly incongruous with the facts of the State’s case against Bearden. The State offered no evidence concerning how Bearden had allegedly assisted William in killing Skipper. The State’s evidence about Bearden’s involvement in the killing was vague and general; its proof was limited to placing Bearden in the car when William stabbed Skipper. But this was sufficient for the State to charge Bearden with first-degree murder and to seek the death penalty against him. The State’s evidence was no more specific about Bearden’s involvement *663 in the killing than the statements that Ray-Alien purportedly made to Tyler. For these reasons, we agree with Bearden that the statements attributed by Tyler to Ray Allen were unquestionably against Ray Allen’s penal interest. Thus the third prong of Chambers is satisfied.
The second prong of the Chambers test, corroboration, is a different matter. The trial court found that the purported statements made by Ray Allen to Tyler were not corroborated. The trial court offered two main reasons for its ruling. First, the purported statements were not corroborated by any evidence in the case except for Bearden’s pretrial statement. Indeed, the remaining evidence in the case was in direct conflict with the substance of the purported statements. The trial court’s second reason focused on Tyler’s credibility. As the trial court observed, Tyler claimed to be close friends with both the Brown family and Bearden. Nevertheless, despite these friendships and the extensive media coverage of the case, Tyler had not mentioned the substance of the statements to anyone connected with the case for almost two years. A recipient’s substantial delay in coming forward with a hearsay account of a de-clarant’s confession to a crime may be considered in assessing the reliability of the recipient’s account of the confession. Jones v. State, 709 So.2d 512, 525 (Fla. 1998). The trial court also pointed out that Tyler’s account did not include any details that would not have been known to anyone in Polk County who had followed the reports about the case that appeared in the local press and on television. Finally, the trial court questioned how Tyler could pinpoint the date of her alleged conversation with Ray Allen almost two years after the event. Tyler’s recollection of this detail seemed too good to be true. In short, Tyler’s testimony about the purported statements was not credible.
The trial court correctly noted that the only direct corroboration of Tyler’s account of the purported statements was Bearden’s prearrest statement to detectives. Bearden argues that his statement constitutes sufficient corroboration to satisfy Chambers ’ third prong, citing the First District’s decision in Curtis, 876 So.2d 13.
In Curtis, a third party named Butler had confessed to the police that he had shot a murder victim. Id. at 16. The case against Butler for the murder went to trial, and he was acquitted. Id. Before Curtis’ trial for the same murder, Butler gave a deposition repudiating his earlier confession and denying that he shot the victim. Id. The State made a pretrial motion to exclude evidence about Butler’s earlier confession. Id. The State argued that Butler’s confession was not admissible as a statement against interest because Butler was available to testify. Id.; see § 90.804(2)(c), Fla. Stat. (2001). The trial court granted the State’s motion and ruled that evidence of Butler’s confession would be excluded at Curtis’ trial. Curtis, 876 So.2d at 16. At trial, the defense proffered Butler’s earlier confession, but the trial court adhered to its pretrial ruling and excluded the proffered evidence. Id. at 18. Curtis was convicted of first-degree murder and armed robbery, and he appealed. Id.
On appeal, the First District reversed and remanded the case for a new trial. Id. at 16. The Curtis court acknowledged that under Florida law it is improper for a party to call a witness for the sole purpose of placing impeachment testimony before the jury. Id. at 20. Nevertheless, the court found that the due process considerations discussed in Chambers required the trial judge in Curtis’ case “to admit a *664 third-party confession under constitutional principles, even if it does not qualify as a declaration against penal interest under the state law of evidence.” Id. at 21. The First District explained that, as in Chambers, Butler’s confession was made under circumstances that provided an assurance of reliability. Id. at 21-23.
We find little similarity between this case and Curtis. Here, the trial court was confronted midtrial with the surprise appearance of a previously unidentified witness nearly two years after Skipper’s death. This witness, who described herself as a friend of Bearden, claimed that Ray Allen had admitted to her that he was in the car with William when Skipper was killed. Under this questionable scenario, the trial court could reasonably conclude that the statements attributed to Ray Allen by Tyler fell short of an out-of-court confession made “under circumstances that provided considerable assurance of [its] reliability.” Chambers, 410 U.S. at 300, 93 5.Ct. 1038.
We also consider the doubts expressed by the trial court about Tyler’s credibility as a witness. Bearden argues that Tyler’s credibility was a matter for the jury to decide. Although this argument has some appeal, we disagree. The trial court’s task was to determine — before allowing the jury to hear Tyler’s testimony — whether the purported hearsay statements of Ray Allen bore sufficient indicia of reliability. To the extent that Chambers requires an analysis of the reliability of the proposed third party’s out-of-court confession, an evaluation of the credibility of the witness the defense proposes to use to place the alleged statements on the record is unavoidable. See Czubak v. State, 644 So.2d 93, 95 (Fla. 2d DCA 1994) (“The trial judge ... found not only that there were no corroborating circumstances showing the trustworthiness of the statements, to the contrary she found the circumstances such as to render the statements unreliable and unworthy of trust.”).
In Chambers, the reliability of the alleged third party’s out-of-court statements was bolstered by several factors. First, the statements were made to more than one witness. Second, the third party was seen with a gun shortly after the shooting. Third, there was evidence that the third party had previously owned a gun and then bought another one shortly after the crime occurred. 410 U.S. at 300, 93 S.Ct. 1038. In this case, there is nothing other than Bearden’s self-serving statements to the detectives before his arrest.[6] In his pretrial statement, Bearden admitted committing several felonies, but he carefully avoided admitting any direct involvement in Skipper’s murder. And the crimes to which Bearden admitted were crimes that he was unable to deny because of the number of witnesses who knew that he had participated in cleaning Skipper’s car and attempting to dispose of it. Under the circumstances, we cannot say that the trial court abused its discretion in concluding that Tyler’s testimony about Ray Allen’s purported statements failed to meet the test of reliability outlined in Chambers. It follows that the trial court did not err in excluding her testimony at Bearden’s trial.
IV. CONCLUSION
For the foregoing reasons, we affirm the judgment and sentences imposed on Bear- *665 den. Our affirmance is without prejudice for Bearden to raise his claims of ineffective assistance of counsel in a timely post-conviction motion.
Affirmed.
VILLANTI, J., Concurs.
ALTENBERND, J., Concurs with opinion.

. Bearden also makes two claims of ineffective assistance of trial counsel. We decline to consider these claims on direct appeal. Our affirmance is without prejudice to Bearden’s right to file a timely postconviction motion raising these claims. See Johnson v. State, 942 So.2d 415, 416 (Fla. 2d DCA 2006).

. William Brown was tried and convicted of the first-degree murder of Skipper. His appeal is currently pending in this court under case number 2D 10-74.

.Bearden did not testify in his own defense. But a few days after Skipper’s murder, Bear-den voluntarily gave detectives a taped statement. The State played this statement for the jury at Bearden’s trial.

. In a separate information, the State charged Bearden with accessory after the fact to first-degree murder, tampering with physical evidence, and dealing in stolen property. Bear-den moved to consolidate the two cases, and the trial court granted his motion. Bearden has not appealed the disposition of the charges filed in the separate information, and we do not address those matters further.

. The trial court’s reference is to Brenton Butler, the juvenile who had confessed to the murder and robbery for which another man was tried and convicted in Curtis v. State, 876 So.2d 13 (Fla. 1st DCA 2004).

. We recognize that the testimony of the State’s witnesses and Ray Allen Brown about the sequence of events was often inconsistent. And we acknowledge that J.T. Brown and John Kirchoff likely had a motive to protect Ray Allen Brown from prosecution. But inconsistencies in the evidence and the credibility of the witnesses were issues for the jury to weigh; they do not bear upon the question of whether Ray Allen Brown's purported out-of-court confession bore sufficient indicia of reliability for admission under Chambers.