# Supreme Court of Florida

_____

No. SC12-1314
_____

**JOSEPH ELI BEARDEN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[April 16, 2015]

LABARGA, C.J.

Joseph Eli Bearden (Bearden) seeks review of the decision of the Second District Court of Appeal in Bearden v. State, 62 So. 3d 656 (Fla. 2d DCA 2011), on the ground that it expressly and directly conflicts with a decision of another district court of appeal, DeWolfe v. State, 62 So. 3d 1142 (Fla. 1st DCA 2011), on a question of law. Specifically, the district courts reached conflicting decisions on whether the judge or jury is charged with determining the credibility of an in-court witness testifying as to an out-of-court statement against penal interest made by a third party. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the

following reasons, we quash the Second District's decision in <u>Bearden</u> and approve

the First District's decision in <u>DeWolfe</u>.

## FACTS AND PROCEDURAL HISTORY

The facts of this case involve the underlying circumstances surrounding the

murder of Ryan Skipper (Skipper) and the relevant events at Bearden's trial for

Skipper's murder, which were set forth in the Second District's opinion:

> The murder victim was a young man named Ryan Skipper. On March 14, 2007, his body was found on the side of Morgan Road in the Wahneta area—he had been stabbed to death. The evidence at trial reflected that on March 13, 2007, Skipper left home in his car after taking a telephone call at 11:10 p.m. Shortly thereafter, he encountered Bearden, who was walking on the side of the road. Skipper picked up Bearden and drove a few blocks to J.T. Brown's home. While Skipper waited outside, Bearden went inside and unsuccessfully attempted to trade a used laptop computer for drugs. Present in the residence were J.T. Brown, Ray Allen Brown (J.T.'s son), John Kirchoff (who was temporarily living there), and William Brown (J.T.'s nephew). All four of these men were methamphetamine users.
>    The events that followed Skipper and Bearden's arrival at the Brown residence led to Skipper's murder. And there was no question that William Brown wielded the knife used to kill Skipper. [n.2] But, as discussed below, Bearden's conviction hinged on whether the jury accepted his version of the events as reflected in his pretrial statement [n.3] or the version testified to by J.T., Ray Allen, and Kirchoff at trial. Bearden's version implicated William and Ray Allen in the murder; J.T., Ray Allen, and Kirchoff's version implicated William and Bearden.
>
> > [N.2.] William Brown was tried and convicted of the first-degree murder of Skipper. His appeal is currently pending in this court under case number 2D10–74.

[N.3.] Bearden did not testify in his own defense. But a few days after Skipper's murder, Bearden voluntarily gave detectives a taped statement. The State played this statement for the jury at Bearden's trial.

J.T., Ray Allen, and Kirchoff testified that after Bearden and Skipper arrived, the generator providing electrical power to the residence began to falter because it was low on fuel. They asked Skipper to drive to a nearby gas station to buy gas for the generator. According to them, Skipper was accompanied on this trip by William, Ray Allen, and Kirchoff. Skipper and the three men returned from the gas station without incident. Thereafter, William, Bearden, and Skipper left in Skipper's car while Ray Allen remained at home for the rest of the night and went to sleep.

This testimony conflicted with Bearden's pretrial statement that the trip to the gas station was a ruse to permit the Browns to rob Skipper. Bearden also claimed that only William and Ray Allen went with Skipper to buy gas and that they returned alone in Skipper's car. When they returned, the men and the car were covered in blood. Although Bearden acknowledged that he knew of the Browns' plan to rob Skipper, he claimed to have no idea that they would kill him. He admitted that he and William cleaned the car and unsuccessfully attempted to sell it or trade it for drugs. But he denied assisting in Skipper's murder or being present when Skipper was killed.

Thus the critical issue of fact at Bearden's trial was whether Skipper was stabbed on the trip to get gas, as Bearden claimed, or when Skipper drove away from the Browns' residence after returning safely from that trip, as the State's witnesses suggested. William—the person who actually stabbed Skipper—was in the car on both trips. If the killing occurred during the trip to the gas station, Ray Allen was directly implicated in the killing because he went along on that trip, but Bearden did not. If the killing occurred after Skipper left the Brown residence the second time with William and Bearden, then Bearden was implicated and Ray Allen—who remained at the Brown residence and went to sleep—could not have had any direct involvement in the killing.

Skipper's partially burned car was discovered near a boat ramp at a lake in the area. Law enforcement officers recovered several sets of fingerprints from the vehicle, including Bearden's and William's fingerprints. After law enforcement officers arrested Bearden, a grand

jury indicted him for first-degree murder and robbery with a deadly weapon. The State sought the death penalty, but the jury's verdict of second-degree murder eliminated the death penalty as a sentencing option. [n.4] On the count charging Bearden with robbery with a deadly weapon, the jury found him guilty of the lesser-included offense of grand theft of a motor vehicle. The trial court sentenced Bearden to five years in prison on the grand theft of a motor vehicle conviction, to run concurrently with his life sentence. Bearden does not challenge his conviction and sentence for grand theft of a motor vehicle.

> [N.4.] In a separate information, the State charged Bearden with accessory after the fact to first-degree murder, tampering with physical evidence, and dealing in stolen property. Bearden moved to consolidate the two cases, and the trial court granted his motion. Bearden has not appealed the disposition of the charges filed in the separate information, and we do not address those matters further.

Bearden, 62 So. 3d at 657-58.

### Bearden's Trial

Bearden's trial began in February 2009. On the second day, a witness named Angela Tyler (Tyler) contacted the prosecutor's office and a Sheriff's Office detective was sent to take her statement. Tyler was not previously identified as a witness during the investigation. Tyler told the detective that a few days after the murder Ray Allen Brown admitted to her that he was with William Brown in the car when Skipper was stabbed. After receiving a copy of Tyler's statement, the defense planned to call her as a defense witness to impeach Ray Allen Brown's anticipated testimony that he was not present at the time of the murder. Although the State planned to call Ray Allen Brown as a witness, his

- 4 -

testimony was not presented in order to prevent the defense from impeaching him. Therefore, the defense called Ray Allen Brown as a defense witness, but did so prior to the proffer of Tyler's testimony. Following Ray Allen Brown's testimony, which was cumulative to that of J.T. Brown and Kirchoff, the defense announced that Ray Allen Brown was subject to recall.

The defense proffered the testimony of Tyler, who knew both Bearden and the Brown family and had a dating relationship with Ray Allen Brown's cousin on and off for about three years. According to Tyler, she encountered Ray Allen Brown at her mother's house on March 18, 2007. She said he seemed upset and she asked him what was wrong. Ray Allen Brown then proceeded to tell Tyler that his cousin, William Brown, "had gotten into a confrontation with a gay guy, and they had an argument, and he had stabbed the guy. And he was with his cousin when he did it." Id. at 659. When Tyler asked him if he was involved in the stabbing, Ray Allen Brown "said no, that he didn't involve [sic] in the murder . . . he had to help his cousin, though, was his exact words, because they was family [sic]." Id. Tyler acknowledged that she believed Ray Allen Brown's admission that he was with William Brown when Skipper was killed, inculpating him in Skipper's murder and exonerating Bearden in any direct involvement in the murder.

Following the proffer, the defense requested to recall Ray Allen Brown to ask him whether he had made these statements to Tyler and requested to present Tyler's testimony about the purported statements to the jury. However, the trial court found Tyler's testimony about Ray Allen Brown's alleged out-of-court statement inadmissible on its face and concluded that it would only be admissible if it met the four factors in Chambers v. Mississippi, 410 U.S. 284 (1973): (1) the confession or statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the confession or statement is corroborated by some other evidence in the case; (3) the confession or statement was self-incriminatory and unquestionably against interest; and (4) if there is any question about the truthfulness of the out-of-court confession or statement, the declarant must be available for cross-examination. Id. at 300-01. The trial court concluded that Tyler's testimony only satisfied two of the four Chambers factors: the first one (spontaneity of declarant's statement to a close acquaintance) and the fourth one (declarant's availability for cross-examination). Consequently, the trial court excluded Tyler's testimony from the jury's consideration. The trial court also ruled that the defense could not recall Ray Allen Brown to question him about his statements to Tyler.

At the conclusion of trial, the jury rejected the first-degree murder charge (premeditated and felony murder) and instead found Bearden guilty of the lesser-

included offense of second-degree murder, for which he received a sentence of life imprisonment.  On the count charging Bearden with robbery with a deadly weapon, he was found guilty of the lesser-included offense of grand theft of a motor vehicle, for which he was sentenced to five years' imprisonment to run concurrently with his life sentence.  He was also convicted of accessory after the fact to the first-degree murder committed by William Brown, tampering with physical evidence, and dealing in stolen property.

On appeal to the Second District, Bearden challenged his conviction for Skipper's murder arguing that the trial court erred in refusing to allow Tyler to testify and in prohibiting Bearden from questioning Ray Allen Brown about the purported statements he made to Tyler.  The Second District echoed the trial court's concern about Tyler's credibility by stating:

> We also consider the doubts expressed by the trial court about Tyler's credibility as a witness.  Bearden argues that Tyler's credibility was a matter for the jury to decide.  Although this argument has some appeal, we disagree. . . .  To the extent that Chambers requires an analysis of the reliability of the proposed third party's out-of-court confession, an evaluation of the credibility of the witness the defense proposes to use to place the alleged statements on the record is unavoidable.

Bearden, 62 So. 3d at 664.  The district court also concluded, in reviewing the trial court's application of the Chambers factors, that Ray Allen Brown's statements to Tyler were statements against interest, and thus, the third factor in the Chambers analysis was also satisfied.  However, the district court agreed with the trial court

- 7 -

that the second factor (corroboration) was not satisfied, and it affirmed Bearden's judgment and sentence. With respect to the corroboration factor, the district court described the requirement as "some external corroboration for the statement." Id. at 661. Because we granted review based on express and direct conflict with the decision of the First District in DeWolfe, 62 So. 3d at 1142, we discuss that decision next.

## DeWolfe

In DeWolfe, the First District Court of Appeal held that "the credibility of an in-court witness who is testifying with regard to an out-of-court declaration against penal interest is not a matter that the trial court should consider in determining whether to admit the testimony." Id. at 1146. In DeWolfe, the defendant was tried for the theft of two air conditioning units. Id. at 1144. At trial, DeWolfe sought to present two witnesses who would testify that they heard another person confess to the crime. Id. at 1143. The defendant relied on section 90.804(2)(c), Florida Statutes (2010), the declaration against penal interest hearsay exception, to assess whether the testimony could be admitted at trial. Id. at 1145. The trial court excluded the testimony of both witnesses. Id. DeWolfe was convicted of felony petit theft and appealed. Id. at 1143. The First District concluded that "[t]he excluded evidence was central to Ms. DeWolfe's defense" and that she was entitled to a new trial. Id. at 1147. The district court also stated that the

- 8 -

determination of a hearsay witness' credibility was to be made by the jury, not the judge, and it noted a distinction between its position and that in Bearden. Id. at 1146. Accordingly, the conflict presented for this Court's resolution is whether the judge or the jury should consider the credibility of a witness testifying with regard to out-of-court statements against penal interest of a third party.

Bearden now contends that: (1) the trial court erred when it improperly infringed upon the role of the jury by evaluating Tyler's credibility and determining that her testimony was not credible; and (2) the trial court erred in evaluating the corroboration factor of the Chambers analysis because it rejected Bearden's own statement to detectives as adequate corroboration of Ray Allen Brown's alleged confession. Further, Bearden argues that he was deprived of due process when the trial court precluded him from recalling Ray Allen Brown regarding his confession to Tyler.[1] For the reasons discussed below, we conclude that the trial court improperly evaluated the credibility of Tyler's testimony and erred when it excluded her testimony on that basis. We also conclude that a

---

[1]. Bearden also raised an issue in his brief regarding the instruction given to the jury on manslaughter. Because we have granted a new trial on the basis of the errors during Bearden's original trial, it is not necessary for us to reach this claim.

defendant's own statement may be considered as corroboration of a witness' testimony for the purpose of the corroboration factor of the <u>Chambers</u> analysis.

## ANALYSIS

### Standard of Review

Generally, a trial court's ruling on the admissibility of evidence will not be disturbed absent an abuse of discretion. <u>Pantoja v. State</u>, 59 So. 3d 1092, 1095 (Fla. 2011). " 'However, a court's discretion is limited by the evidence code and applicable case law. A court's erroneous interpretation of these authorities is subject to <u>de</u> <u>novo</u> review.' " <u>Id.</u> (quoting <u>McCray v. State</u>, 919 So. 2d 647, 649 (Fla. 1st DCA 2006)).

### Credibility Determination

The judge, as gatekeeper, decides only whether evidence exists and is admissible. Once the evidence is admitted, the jury decides whether it is credible. <u>See</u> <u>Carpenter v. State</u>, 785 So. 2d 1182, 1203 (Fla. 2001). However, in <u>Bearden</u>, the trial court infringed upon the jury's role and evaluated Tyler's credibility. The trial court stated:

> Now, was there any unique facts given to us? Sort of. He said that there was an argument, may have been involved over a sexual advance, and Bill-Bill stabbed him. Any person in Polk County in the last year and a half could have surmised that information by reading the extensive press coverage on this case, and certainly could have picked it up from listening to television coverage of this case.
> And in fact, that's another concern about mine. Why in the world when this woman, that being Ms. Tyler, who admitted in her

proffer that she knew everyone involved in this case—she knew the defendant, she knew Ray Ray Brown, she knew Bill Brown, she knew their uncles, or their fathers. She knew all these people, and she claims, in spite of the fact that none of these people can even tell you what time of day it was, she claims to specifically remember that this occurred on the 17th.

That's three days or less after this crime was committed, and she didn't tell anybody until two years later, when she's watching this on television.

In Carpenter, this Court concluded that the trial court erred when it questioned the credibility of in-court witnesses.[2] We explained that under Florida law, the credibility of an in-court witness who is testifying as to an out-of-court declaration against penal interest is not a matter for the trial court's consideration in determining whether to admit the testimony. 785 So. 2d at 1203. Instead, the jury has the duty to assess the credibility of an in-court witness who is testifying about the out-of-court statement against penal interest. Id. Indeed, the jury does not usurp the judge's role by determining admissibility of evidence; therefore, the judge should not usurp the jury's role by assessing the credibility of an in-court witness. Thus, we agree with the First District in DeWolfe.

The trial court's concerns demonstrated that it was focused on Tyler's credibility and her testimony about the hearsay statements. However, the proper

_____

2. Carpenter is distinguishable from Bearden because the declarant in Carpenter was unavailable to testify, and thus, section 90.804(2)(c) applied. However, Carpenter's analysis regarding the jury's role in assessing the credibility of an in-court witness is applicable here.

focus for the Chambers analysis is the reliability of the hearsay statements themselves. The concerns about Tyler's credibility could easily have been addressed by the State on cross-examination. Because of the importance of Tyler's testimony to Bearden's defense, we conclude that the trial court erred in considering Tyler's credibility. As the district court observed in Bearden, if the jury believed Tyler's testimony, it would have exonerated Bearden. Bearden, 62 So. 3d at 659. Therefore, there is a reasonable probability that this error affected the verdict. See State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986).

Even if the trial court improperly considered Tyler's credibility, a determination as to whether her testimony is admissible cannot be made independently of the four-factor analysis in Chambers and an assessment of the reliability of the hearsay to which she would testify. Accordingly, we now turn to Tyler's proffered testimony and the sole factor in Chambers that is at issue in this case: corroboration.

**Bearden's Statement as Corroboration**

Because Ray Allen Brown's alleged statement to Tyler was an out-of-court statement that was offered for the truth of the matter asserted—that Ray Allen Brown was present in Skipper's car when Skipper was murdered—the statement constituted inadmissible hearsay under section 90.802, Florida Statutes. Under that section, hearsay is inadmissible as evidence at trial or a hearing except as provided

- 12 -

by statute. A possible hearsay exception for Tyler's testimony regarding the statement might have been the exception for a statement against penal interest under section 90.804(2)(c), Florida Statutes. However, section 90.804(2)(c) provides that hearsay that constitutes a statement against penal interest is admissible if the declarant is <u>unavailable</u> to testify, and in the present case, Ray Allen Brown was available to and did testify at trial. Thus, Tyler's testimony would not have been admissible under section 90.804(2)(c).

However, in <u>Chambers</u>, the United States Supreme Court concluded that the exclusion of hearsay regarding a third party's confessions to a crime violated the defendant's constitutional right to due process—the state's rules of evidence notwithstanding. In <u>Chambers</u>, the defendant was convicted of the murder of a police officer. <u>Chambers</u>, 410 U.S. at 285. During his trial, Chambers sought to introduce evidence that another individual orally confessed three separate times and also offered a sworn, albeit later recanted, confession. <u>Id.</u> at 289. However, because Mississippi law would not allow the defense to impeach its own witness, Chambers was precluded from introducing evidence relating to the alleged confessions. <u>Id.</u> at 289, 294.

Chambers argued that his right to due process was violated because he was unable to introduce evidence relating to another person's confessions to the crime for which he was convicted. <u>Id.</u> at 298. The Supreme Court evaluated Chambers'

argument in light of four factors intended to evaluate the admissibility of an out-of court statement: (1) the confession or statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the confession or statement is corroborated by some other evidence in the case; (3) the confession or statement was self-incriminatory and unquestionably against interest; and (4) if there is any question about the truthfulness of the out-of court confession or statement, the declarant must be available for cross-examination. Id. at 300-01.[3]

The First District has offered a compelling discussion of the rationale for the constitutional analysis in Chambers. In Curtis v. State, 876 So. 2d 13, 20-21 (Fla. 1st DCA 2004), the district court observed:

> Florida allows litigants to impeach their own witnesses, but that does not necessarily resolve the constitutional problem identified in Chambers. Although a witness may be impeached in Florida by "[a]ny party, including the party calling the witness," pursuant to section 90.608, Florida Statutes, it is still improper under Florida law for a party to call a witness merely as a device to place the impeaching testimony before the jury. See Morton v. State, 689 So. 2d 259 (Fla. 1997), receded from on other grounds by Rodriguez v. State, 753 So. 2d 29 (Fla. 2000). In the present case, Butler testified in his deposition that he did not shoot Mrs. Stephens and that his earlier confession was false. As it turned out then, Curtis was no better off than Chambers. He was precluded, albeit for a slightly different reason, from calling the declarant to the witness stand and confronting him with the confession.

---

3. As the Fourth District accurately explained, "Chambers does not necessarily establish an immutable checklist of four requirements. Instead, the primary consideration in determining admissibility is whether the statement bears sufficient indicia of reliability." Bearden, 62 So. 3d at 661.

- 14 -

Nor is the due process problem identified in Chambers resolved merely because Florida recognizes an exception to the hearsay rule for declarations against penal interest. If a confession by a third party is critical evidence that should have been admitted in evidence to protect the constitutional rights of the accused, the particular reason for excluding it under state law will make little difference. If the confession was excluded on the ground that it did not meet the requirements of the declaration against penal interest exception, the effect would be the same as if there were no exception at all. Here again, Curtis was no better off than Chambers. It did not help him that Florida generally recognizes an exception for declarations against penal interest, because the exception could not be employed under the facts of his case.

Indeed, the Florida courts have consistently applied the constitutional analysis in Chambers, despite the exception in section 90.804(2)(c), Florida Statutes, for declarations against penal interest. See Grim v. State, 841 So. 2d 455, 464 (Fla. 2003); Sliney v. State, 699 So. 2d 662, 670 (Fla. 1997); Gudinas v. State, 693 So. 2d 953, 965 (Fla. 1997); Hartley v. State, 686 So. 2d 1316, 1321 (Fla. 1996); Lightbourne v. State, 644 So. 2d 54, 57 (Fla. 1994). As these opinions implicitly recognize, a trial judge may be required to admit a third-party confession under constitutional principles, even if it does not qualify as a declaration against penal interest under the state law of evidence.

Similar to Curtis, Bearden was unable to avail himself of the statement against penal interest exception. Thus, the trial court properly considered Tyler's statement under the Chambers analysis, but concluded that only two of the factors were satisfied (spontaneous statement and declarant's availability for cross-examination). The district court further concluded that Ray Allen Brown's alleged confession was also a statement against penal interest for purposes of meeting the third factor of the Chambers analysis. However, the Second District agreed with the trial court that the alleged confession was not adequately corroborated and

lacked reliability. The district court twice discounted Bearden's statement: "First, the purported statements were not corroborated by any evidence in the case <u>except for</u> Bearden's pretrial statement." <u>Bearden</u>, 62 So. 3d at 663 (emphasis added). The district court also stated that "there is nothing <u>other than</u> Bearden's self-serving statements to the detectives before his arrest." <u>Id.</u> at 664 (emphasis added).

Corroborative evidence is admissible "to strengthen a witness' testimony by evidence of matters showing its consistency and reasonableness and tending to indicate that the facts probably were as stated by the witness." <u>Chaachou v. Chaachou</u>, 73 So. 2d 830, 837 (Fla. 1954). Corroborating evidence is defined as "[e]vidence that differs from but strengthens or confirms what other evidence shows (esp. that which needs support)." <u>Black's Law Dictionary</u> 674 (10th ed. 2014). In <u>Chambers</u>, the United States Supreme Court described the corroboration factor as requiring "some other evidence in the case." <u>Chambers</u>, 410 U.S. at 300. In applying the <u>Chambers</u> analysis in <u>Jones v. State</u>, this Court also observed that "each confession [must be] corroborated by some other evidence in the case." <u>Jones v. State</u>, 709 So. 2d 512, 524 (Fla. 1998); <u>see also</u> <u>Sims v. State</u>, 754 So. 2d 657, 661 n.6 (Fla. 2000) (stating that under <u>Chambers</u>, one of the four factors that must be considered when determining whether hearsay is permitted as substantive evidence is whether "each confession was corroborated by some other evidence in the case"); <u>Card v. State</u>, 453 So. 2d 17, 21 (Fla. 1984) (quoting <u>Chambers</u>'

- 16 -

statement that a declarant's hearsay statements must be "corroborated by some other evidence in the case . . .").  In <u>Bearden</u>, however, the district court varied the language and articulated the corroboration factor as "there must be some external corroboration for the statement."  <u>Bearden</u>, 62 So. 3d at 661.

Because the proper standard is "some other evidence," we are hard-pressed to see why Bearden's statement, which was actually introduced during the State's case-in-chief, does not satisfy this burden.  <u>See</u> <u>U.S. ex rel. Gooch v. McVicar</u>, 953 F. Supp. 1001, 1009 (N.D. Ill. 1997) ("The Court in <u>Chambers</u> only required that the confessions at issue were corroborated by <u>some</u> other evidence in the case."). Bearden made his pretrial statement implicating Ray Allen Brown in the murder to police detectives just days after the murder.  <u>Bearden</u>, 62 So. 3d at 657 n.3.  This statement corroborated the version of events that Tyler subsequently came forward with and would have testified to at trial.

The United States Supreme Court in <u>Chambers</u> offered the following salient observation: "The State's proof at trial excluded the theory that more than one person participated in the shooting of [Officer] Liberty.  To the extent that McDonald's sworn confession tended to incriminate him, it tended also to exculpate Chambers."  <u>Chambers</u>, 410 U.S. at 297.  Similar to <u>Chambers</u>, the State's theory in the present case was that Skipper died at the hands of William Brown and only one other person, Bearden.  Yet, Bearden contended that Ray

Allen Brown was the person present with William at the time of Skipper's death. Ray Allen Brown's alleged statements to Tyler struck at the heart of the case, tended to implicate himself, and simultaneously tended to exculpate Bearden. Thus, Tyler's excluded testimony was germane to the central issue at trial. Moreover, Bearden's statement should have sufficed as corroboration under Chambers.

## Exclusion of the Recall of Ray Allen Brown

Agreeing with the trial court, which prohibited Bearden from impeaching Ray Allen Brown on recall regarding his alleged confession to Tyler, the district court concluded that because Tyler's testimony about the out-of-court statement was inadmissible, it was likewise improper to allow Bearden to confront Ray Allen Brown about the confession. Under section 90.608(5), Florida Statutes, "[a]ny party, including the party calling the witness, may attack the credibility of a witness by . . . [p]roof by other witnesses that material facts are not as testified to by the witness being impeached." Because Tyler's proffered testimony placed Ray Allen Brown in Skipper's car at the time of the murder, he could have been impeached as to his whereabouts at the time of and his involvement in the murder. However, this Court's decision in Morton v. State, 689 So. 2d 259 (Fla. 1997), receded from on other grounds by Rodriguez v. State, 753 So. 2d 29 (Fla. 2000), provides that a party may not call a witness for the primary purpose of developing

- 18 -

impeachment evidence. In light of this rule, Ray Allen Brown could not have been recalled to the stand solely for the purpose of impeachment.

Nevertheless, according to the United States Supreme Court, the due process right of a defendant in a criminal trial "is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers, 410 U.S. at 294. "The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." Id. Indeed, the right of an accused to present witnesses in his own defense is one of the most fundamental rights. Id. at 302.

Bearden should have had the opportunity to impeach Ray Allen Brown. The State "lost interest" in Ray Allen Brown as a witness only after Tyler surfaced with his alleged confession. Bearden, 62 So. 3d at 660. The State's strategic decision not to call Ray Allen Brown left Bearden in the position of having to call him as a witness and this deprived Bearden of the opportunity to impeach Ray Allen Brown based on Tyler's testimony. The subject upon which Ray Allen Brown could have been impeached was central to the defense theory that he, not Bearden, was in Skipper's car at the time of the murder. Consequently, the exclusion of the examination of Ray Allen Brown on recall deprived Bearden of due process. Under these circumstances, we conclude it was error for the trial court to prohibit Bearden from calling Ray Allen Brown.

# CONCLUSION

In sum, we hold that the trial court improperly evaluated the credibility of Tyler's testimony, erroneously determined that Bearden's statement was not adequate corroboration under Chambers, and improperly prevented Bearden from recalling Ray Allen Brown. For these reasons, we approve DeWolfe, quash the Second District's decision in Bearden, and remand for a new trial consistent with this opinion.

It is so ordered.

PARIENTE, LEWIS, QUINCE, POLSTON, and PERRY, JJ., concur.
CANADY, J., concurs in result with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., concurring in result.

I concur in the majority opinion except for the portions of the opinion relating to the prohibition of the recalling of Ray Allen Brown. I would not address that issue.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

Second District - Case No. 2D09-1325

(Polk County)

Michael Patrick Matthews and Lawrence Joseph Dougherty of Foley & Lardner LLP, Tampa, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Robert Jay Krauss, Bureau Chief, Susan D. Dunlevy, Assistant Attorney General, and Diana Kay Bock, Assistant Attorney General, Tampa, Florida,

for Respondent