NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


HARLEME L. LARRY,                        )
                                         )
          Appellant,                     )
                                         )
v.                                       )          Case Nos.  2D13-4610
                                         )                     2D16-2562
STATE OF FLORIDA,                        )
                                         )          CONSOLIDATED
          Appellee.                      )
_____)

Opinion filed March 23, 2018.

Appeals from the Circuit Court for Pasco
County; Pat Siracusa, Judge.

Howard L. Dimmig, II, Public Defender,
and Dan Hallenberg, Special Assistant
Public Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and David Campbell,
Assistant Attorney General, Tampa,
for Appellee.


SILBERMAN, Judge.

          Harleme L. Larry appeals his judgment and forty-year sentence for murder

in the first degree that was committed during a robbery when he was fourteen years

old.[1]  Larry raises issues regarding the denial of the motion to suppress his statements, incomplete jury instructions, and the exclusion of evidence the defense sought to admit at trial.  Because Larry was denied his right to a fair trial by the exclusion of evidence that another person confessed to the murder, we reverse and remand for a new trial. We also direct the trial court on remand to instruct the jury on robbery, the underlying felony for felony murder.  We have determined that no error occurred regarding the remaining issues and do not address them.

This charge arose after four Hispanic men were robbed while they were sitting on the steps outside a home on Oak Street shortly after midnight on July 10, 2010.  The men had only a few dollars, and the perpetrator shot one of the men in the chest.  That individual died as a result of the shooting.  The gun was never recovered. Witnesses testified that the perpetrator was wearing a dark bandanna, possibly black, and carrying a black bag.

About two days later, Larry went to the sheriff's office.  He confessed that he shot the man but stated that he was not robbing the men and that he acted in self-defense.  But at trial, Larry testified that he was "taking the rap" for his older friend, Derrick Wright.  His defense was that Wright committed the robbery and shooting and that Wright had talked Larry into giving a false confession.  Wright and his aunt had taken Larry to the sheriff's office so that Larry could make his confession.

---

[1]This court has consolidated the appeal of the judgment and sentence and the appeal of the order denying Larry's motion for new trial that alleged juror misconduct, but Larry does not raise any issues on appeal regarding the denial of his motion for new trial.

After Larry confessed, a black bag was found in his residence, and the bag had gunshot residue in it. At trial, Keith Cheatum testified that he saw a black male walking near Oak Street in the early morning of July 10, 2010. The male had a red bandanna on his face and was carrying a black bag. The male asked Cheatum what he was looking at, and Cheatum responded that he was not looking at anything. Cheatum identified the bag found in Larry's residence as looking like the bag he saw the male carrying. Cheatum was later recalled and testified that he had known Wright since he was a young child and knew his voice. Cheatum was certain that the man he encountered on the street that night was not Wright.

Larry sought to introduce Edner Dely's testimony that Wright had admitted to committing the crime. Larry proffered Dely's testimony, but the trial court excluded it after considering the factors set out in Chambers v. Mississippi, 410 U.S. 284 (1973). Larry also proffered Wright's testimony in which he denied killing the victim and stated that he had never seen or spoken to Dely until the day of trial. Larry sought to impeach Wright with his out-of-court statement to Dely. The trial court prohibited the impeachment, stating that the defense could not impeach Wright with a statement that it knew he was not going to admit to making and that the defense could not call Dely to confront Wright with the statement. Based on the ruling, the defense chose not to call Wright as a defense witness.

On appeal, Larry recognizes that Wright's alleged confession to Dely is not admissible as a hearsay exception for a declaration against penal interest under section 90.804(2)(c), Florida Statutes (2013), because Wright was available to testify at trial. Larry instead argues that his due process right to a fair trial was violated.

In Lightbourne v. State, 644 So. 2d 54, 57 (Fla. 1994), the court observed that in Chambers the United States Supreme Court determined that due process concerns can overcome hearsay rules. Thus, "a trial judge may be required to admit a third-party confession under constitutional principles, even if it does not qualify as a declaration against penal interest under the state law of evidence." Bearden v. State, 161 So. 3d 1257, 1265-66 (Fla. 2015). The Chambers Court considered four factors in determining when an out-of-court statement is admissible:

> (1) the confession or statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the confession or statement is corroborated by some other evidence in the case; (3) the confession or statement was self-incriminatory and unquestionably against interest; and (4) if there is any question about the truthfulness of the out-of court confession or statement, the declarant must be available for cross-examination.

Bearden, 161 So. 3d at 1265 (citing Chambers, 410 U.S. at 300-01). The main consideration is whether the statement has sufficient indications of reliability. Id. at 1265 n.3. The Florida Supreme Court pointed out that a defendant's statement can serve as corroboration and that Chambers required corroboration by "some other evidence in the case." Id. at 1266 (quoting Chambers, 410 U.S. at 300).

In Bearden, several days after the murder a third party named Ray Allen Brown made a statement to a woman named Angela Tyler who knew Bearden as well as the Brown family. Id. at 1261. In the statement, Brown implicated himself and his cousin in the murder for which Bearden was on trial. Id. Bearden had made a pretrial statement to police implicating Brown in the murder. Id. at 1266. The Florida Supreme Court determined that the defendant's own statement made days after the murder and introduced into evidence by the State was adequate corroboration under Chambers. Id.

at 1266-67. The court also determined that the trial court should have allowed the defense to recall Brown and impeach him with his alleged confession to Tyler and that the exclusion of the evidence deprived Bearden of due process. Id. at 1267.

Here, the trial court found that Wright's alleged statement was against his penal interests but that the statement was not spontaneous. In doing so, the court described the conversation as two young men bragging about criminal activities in a bar. A person's explicit admission to committing a murder is certainly against a person's penal interests. But with respect to spontaneity, it appears to have been a spontaneous conversation in a social setting rather than, for instance, one that was the subject of interrogation. We recognize that bragging about criminal activity may lessen the reliability somewhat. For instance, a confession to a police officer was deemed reliable in Curtis v. State, 876 So. 2d 13, 21 (Fla. 1st DCA 2004), but the court mentioned that it would have been more concerned if the declarant "had been bragging to his friends."

Larry proffered Dely's testimony. Dely testified that he knew both Wright and Larry. About a week after the murder, Dely was in a bar with Wright. Wright told him that "he had killed the Mexican behind Lock street, that he had his auntie take Harleme [Larry] to the police department and confess to the murder." The conversation came up when Dely and Wright were "hanging out" and "[m]ostly like bragging about things that [they] do." Dely explained that the things were "[c]riminal-wise."

Larry presented evidence to corroborate Dely's proffered testimony. Two days after the murder, Larry went to the sheriff's office and told two detectives that he shot the man in self-defense. Wright's aunt drove Larry to the sheriff's office. Although

- 5 -

Wright did not mention to Dely that Wright accompanied his aunt and Larry, the omission of that detail does not render the statement unreliable.

At trial, Larry testified that Wright asked him to "take the rap" for the murder. Wright told Larry that if he said he acted in self-defense he would get only two years because he was young. Wright led Larry to believe that because Wright was eighteen he would get a lot more. Larry further testified that Wright talked him into going to the sheriff's office and told Larry to confess to the murder, so Larry "guess[ed] he had something to do with it."

We note that there was evidence that was contrary to the theory that Wright committed the murder. In addition to Larry's confession at the sheriff's office, a black bag that looked like the one the perpetrator was carrying was found in Larry's residence and had gunshot residue in it. Cheatum, the witness who had known Wright since he was a young child and knew his voice, testified that the man he encountered on the street that night was not Wright.

However, the Chambers test only requires that the defendant show corroboration by "some other evidence in the case." Bearden, 161 So. 3d at 1266 (quoting Chambers, 410 U.S. at 300). A defendant's statement can serve as that corroboration. Id. Here, Larry's statement to the detectives and testimony at trial provided that corroboration. We note that the State argued in its brief that Wright's statements to Dely were not corroborated, but the State failed to address Larry's statements as corroboration. And the fact that Wright's aunt drove Larry to the sheriff's office provides some further corroboration of Wright's statement to Dely.

The circumstances show that a spontaneous statement was made against penal interest, that the statement was corroborated with some evidence, and that Wright was available to testify at trial. See id. at 1265. Based on Bearden, we conclude that the statement had sufficient indicia of reliability and that Larry was denied his right to a fair trial by the exclusion of the statement. Thus, we reverse and remand for a new trial to allow evidence of Wright's statement that he committed the murder and got Larry to confess to it.

In addition, Larry also proffered Wright's testimony in which he denied killing the victim and stated that he had never seen or spoken to Dely until that day at trial. A party may not normally call a witness for the primary purpose of impeaching him, but in some instances this may deprive a defendant of due process. See id. at 1267. As in Bearden, the defense should be allowed to call Wright as a witness and impeach him with his statements because they are "central to the defense theory." Id.

In summary, we reverse and remand for a new trial because Larry was denied his right to a fair trial by the exclusion of evidence that Wright confessed to the crime. For purposes of remand, we briefly address the jury instructions. When instructing the jury on felony murder, it is essential that the underlying felony "be defined sufficiently to ensure the accused a fair trial." Spagnolo v. State, 116 So. 3d 599, 604 (Fla. 5th DCA 2013) (quoting State v. Jones, 377 So. 2d 1163, 1164 (Fla. 1979)); see also Tubman v. State, 633 So. 2d 485, 485 (Fla. 1st DCA 1994) (recognizing error in failure to instruct on the underlying crime of robbery in connection with the offense of felony murder). Thus, on remand, the trial court must instruct the jury on robbery, the underlying felony for felony murder.

Reversed for new trial and remanded with instructions.


VILLANTI and BADALAMENTI, JJ., Concur.